STATE OF IOWA, Appellee, v. C. H. YARHAM, Appellant.

834

October 16, 1928.

John A. Huglin and Otto J. Eckey, for appellant.

John Fletcher, Attorney-general, William W. Simmons, County Attorney, and Leo D. Thoma, Special Prosecutor, for appellee.

De Graff, J.—The indictment in the instant case is predicated on Section 13045, Code of 1924, which reads:

"If any person designedly and by false pretense, * * * with intent to defraud, obtain * * * the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned * * * "

The written instrument in question is as follows:

"$26.50  Fairfield, Iowa. March 24, 1927.
"On Demand for Value received, I promise to pay to C. H. Yarham, or order, at Des Moines, Iowa, Twenty six 50/100 Dol-

lars. Given for labor and material to be used in making rugs for family use in the home, with interest at eight per cent after sixty days and all costs of collection permitted by law including a legal collection fee.

908 S. Main Street                               Mrs. John Roth
                                              "(Please write plain)."

The primary errors involve (1) rulings on objections to the admission of testimony relative to the denial of the United States post-office department in the use of the mail by the defendant in his rug business; (2) rulings on objections in the admission of evidence of similar transactions; and (3) the sufficiency of the evidence, with a special reference to the motion of the defendant for a directed verdict at the close of the State's evidence. The evidence offered by the State in the first instance was not persuasive, and the motion for a directed verdict at this point should have been sustained.

By way of brief review of the facts, it may be stated that the appellant was a resident of Des Moines, engaged in the business of soliciting old materials for the purpose of making the same into rugs. He was a man 70 years of age, and had been engaged in this particular class of work for 16 years. He operated under the trade name of the Advertising Rug Company. At the time in question, he was pursuing his vocation in Fairfield, Iowa, and, on March 24, 1927, called at the home of Mrs. John Roth. Pursuant to a conversation between them, she decided to accept the proposition of the appellant, and at that time, the appellant prepared the order; which was denominated an "itemized statement." This statement was addressed to Mr. and Mrs. John Roth, Fairfield, Iowa, and bore the caption:

"In account with the Advertising Rug and Clothing Company, 1504 11th Street, Des Moines, Iowa.

"C. H. Yarham, Mgr., collectors for and distributors of reliable and dependable rugs made from old carpets, rugs, clothing, chenille curtains, etc."

The body of the statement then read:

"Your order was taken with promissory note given as an acceptance of and in settlement for same and dated March 24, 1927, with payment due on demand at Des Moines.

"The rugs as per your order cost you $31.00

"Your credit by cash you paid, surplus stock or material not needed to make up your order 4.50

"Balance you owe after making all allowances and if this does not correspond with the copy left with you by the agent please notify us at once 26.50

\* \* \*

"The total amount of your bill is now due $26.50"

The statement also contains directions how to remit to the company, and specifically recites, "Read the copy left by the agent, which contains the entire contract," and that "All goods should be paid for before being shipped." There is also this provision in the statement:

"If you did not make the advance payment of forty per cent when the order was taken but in lieu thereof gave your note for the entire amount instead, do not neglect it for it must be paid as you agreed to do when you signed it, and as soon as we get our money we will send your note properly cancelled."

It appears that, after the appellant and Mrs. Roth had agreed upon the details of the transaction, a tablet which contained blank memorandum orders or "itemized statements" and promissory notes was produced by the appellant. The instruments in evidence were then properly filled out, and handed Mrs. Roth for her signature. She then and there signed the two documents. It is admitted that the two instruments signed by Mrs. Roth were executed in duplicate, and that the duplicate copy was given to Mrs. Roth and kept by her. The appellant's testimony in this particular is in no way challenged. His story is as follows:

"After we had made the arrangement, I handed the tablet to Mrs. Roth, and showed her where to sign it. The tablet had a memorandum of the items, showing the weight of materials that I got, and shows all the sizes of the rugs and numbers of the rugs, and what each rug was to cost. I filled it all out. Exhibit A [the note] is the lower part of the white top sheet. Exhibit-D1 [memorandum of agreement] is the top part of the white sheet. The two go together. Exhibit A and D-1 are just one sheet, with perforations. I had a big tablet of them. The

white sheet was on top, and the colored pink or yellow sheet was on the underside, with the carbon paper in between. I showed her where to sign in two places.''

Mrs. Roth admits that she signed her name twice, that she signed no other order, and that he kept the white sheet, and gave her the yellow. It is undisputed that she had possession of the duplicate sheet at all times after the time it was delivered to her by the appellant. She admits that she had an opportunity to read it, but did not, although she could read the English language. There was no attempted concealment, active or otherwise, by the appellant of the instruments in question.

. At this point, the false pretense enters, and is based on the statement of Mrs. Roth, to wit:

''He just handed me the paper, and says, 'You sign this.' I says, 'What is it?' He says, 'Just a memorandum of your order,—that is all it is;' and he says, 'You sign it here, and sign it here,' and I never read it, and I signed it in both places, as indicated by him.''

With this factual setting in mind, we turn to the propositions involving the rulings of the trial court on the objections of the defendant to the admission of certain evidence which must be viewed as quite prejudicial in character.

. I. When the defendant's motion for a directed verdict was overruled, at the close of the State's evidence in chief, the defendant himself took the witness stand. As such witness, he was  entitled to invoke the statutory limitation, and to have the statute applied. It will be borne in mind that the defendant's objections which were overruled had to do with testimony that was elicited by the State on the cross-examination of the defendant. When a defendant testifies in his own behalf, he is subject to cross-examination as an ordinary witness, ''but the State shall be strictly confined therein to the matters testified to in the examination in chief.'' Section 13892, Code of 1924.

: The instant record discloses that the following question was asked the defendant:

''Q. Now the United States post-office department has issued an order denying you the use of the mails in your rug business?''

To this question proper objections were made, including its incompetency and immateriality, "not showing intent; not having any bearing on the question in issue." The objection was overruled, with the comment of the court: "I think it does, if it is true." Whereupon the defendant-witness answered: "Yes, sir." It is apparent that this matter did not tend in any manner to prove the charge in the instant indictment. The jury was left to speculate on the reason for the denial by the post-office department, and, without competent proof, assume that the denial was by reason of acts similar to that charged in the indictment. The mere denial by the government to the defendant of the use of the mail does not constitute proof that he was guilty of a crime, and the conclusion is irresistible that the compulsory admission involved in his answer to the instant question was highly prejudicial.

Cross-examination must be confined to facts connected with the direct examination; and although the range of cross-examination, to some extent, rests with the discretion of the trial court, it must be confined, as defined by statute, "strictly" to the matters testified to in the examination in chief.

We conclude that the appellant has just and legal grounds for complaint in this particular.

II. Another item of evidence to which a proper challenge was directed, and overruled by the trial court, has to do with the cross-examination of the defendant relative to claimed trans-actions with persons other than the prosecuting witness. By way of prefatory statement it may be said that, when the State rested, in the first instance, there was no testimony whatsoever which tended to prove transactions similar to the one in which the prosecuting witness, Mrs. Roth, was involved. It may further be said that, had the witnesses who were called by the State on rebuttal, to prove similar transactions, been called by the State on its evidence in chief, they would, on proper objection, have been excluded, for the reason that their names were not indorsed upon the indictment, and no notice, as required by statute, had been given by the State. It is obvious that the State attempted to prove indirectly what it was not legally privileged to do directly. These matters were introduced by the State for the first time in rebuttal, and the

groundwork for the so-called impeachment of the defendant was laid on the cross-examination of the defendant without any reference or allusion to such matters in his direct examination by his counsel. The following questions are typical of the cross-examination of the defendant:

"Q. Did you represent to Mrs. Earl Keller last March, while you were in Fairfield, that you represented the Chicago Boston Company?" "Q. There were a number of people you took orders for rugs?" "Q. Do you remember whether you took an order from Mrs. N. S. Birke, living out on West Stone Street?" (To which the defendant answered, "I do.") "Q. Do you remember of getting a promissory note similar to the promissory note signed by Mrs. Roth by representing to her that it was only a memorandum of order?" "Q. Did you say you did or did not make any representation to Mrs. Bates in the city of Fairfield last March by representing to her it was simply a memorandum of order?"

These and other questions involving so-called similar transactions were put to this defendant on his cross-examination, and constitute the groundwork for the State to call certain of these witnesses on rebuttal.

For example: Mrs. N. S. Birke testified, over proper objection, that she ordered one rug from the defendant, and that she signed certain papers.

"Q. I want to ask you whether or not, on that occasion, you signed an order you afterwards learned to be a promissory note, upon the express representation of Mr. Yarham it was only a memorandum of an order for rugs? A. I did."

We recognize the exception to the general rule in a case of this character that other offenses of similar character are admissible to prove design, scienter, and intent. *State v. Baugh*, 200 Iowa 1225; *State v. Cordaro*, 206 Iowa 347. However, we do not indorse the application of the rule under the facts of the case at bar. As heretofore pointed out, a defendant-witness in a criminal case cannot be cross-examined except in reference to matters concerning which he has been examined in chief. The State is not permitted by cross-examination of the defendant to lay the foundation for attempted impeachment, as was done in

this case, and then, on rebuttal, prove facts which it was compelled to establish by its evidence in chief.

It may further be noted that the testimony of Mrs. Birke does not come within the rule governing similar transactions for the purpose of showing the intent of the defendant. There was no attempt on the part of the State in the Birke transaction, for instance, to prove that there was any intent to defraud in his dealings with Mrs. Birke. Proof of similar transactions involving crime must be clearly shown. Mere suspicion is not enough. The evidence must be such that there can be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not. See *State v. Carter*, 112 Iowa 15; *State v. Foxton*, 166 Iowa 181; *Haley v. State*, 84 Tex. Cr. 629 (209 S. W. 675); *Baxter v. State*, 91 Ohio St. 167 (110 N. E. 456).

This appellant could not have contemplated that he would be questioned on cross-examination upon points which were unconnected with the fact to be tried, and which were not the subject of inquiry upon his direct examination. It was, in effect, the introduction of collateral issues. It is quite obvious that the testimony of Mrs. Birke, for instance, could not have been admitted for any purpose independent of the contradiction of the testimony of the defendant. Her name was not on the indictment, and, as a matter of justice and law, the State should have been bound by the answers of the defendant.

For the reasons stated, the judgment entered is—*Reversed*.

Stevens, C. J., and Albert, Morling, and Wagner, JJ., concur.