STATE OF IOWA, Appellee, v. JAMES PORTER, Appellant.

No. 45117.

DECEMBER 10, 1940.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Maurice E. Rawlings, County Attorney, for appellee.

John Connolly, Jr., and C. I. McNutt, for appellant.

OLIVER, J.—Defendant, James Porter, with four other men, was indicted for the crime of malicious mischief, it being charged that they did wilfully, unlawfully, feloniously and maliciously injure and destroy certain residence fixtures and goods of one W. E. Kruck. Upon trial to a jury, defendant, James Porter, was convicted and has appealed.

Appellant was a representative of the Packing House Workers' Organizing Committee, and on September 30, 1938, was sent to Sioux City, Iowa, to take charge of a strike then in progress at the Swift & Company packing plant and to negotiate a settlement. He owned a black 1939 Chevrolet coach, which was used by himself and others, apparently both day and night, to haul pickets between the Union Commissary and the Swift picket lines; also for general service around strike headquarters and the commissary; and for hauling groceries and coal and also wood taken from a dismantled building and used for kindling to the homes of strikers and to the commissary and strike headquarters.

W. E. Kruck was an employee at the Swift plant and was secretary of another Packing House Union than the one then on strike. There is evidence that appellant knew Kruck and disliked him. Kruck's home was at 618 South Alice Street, which was an unpaved street.

At 3:30 a. m., on December 15, 1938, at a time when Kruck was at work, Mrs. Kruck was awakened by a noise caused by missiles simultaneously crashing through several windows on different sides of the house. Mrs. Kruck arose, noticed the shattered windows, and hurried to the front porch of the house. She testified she saw no person but saw a black 1939 Chevrolet coach standing in Alice Street under a lighted street lamp located at the corner of the block across the street south of the Kruck home about 100 feet. This car started immediately and went south on the street. The police were called and an examination made of the damage to the windows, fixtures and goods. Rocks and pieces of brick and mortar were found among the debris in the house.

Shortly before 5 a. m., the police stopped appellant's car as it was approaching strike headquarters near the Swift plant, searched and arrested appellant and the other four defendants who were riding with him and took possession of the car. Appellant admitted that no one other than he had possession of the car during the night. The other men were strikers and pickets and appellant testified he was transporting them from the commissary to the picket lines. His story was that he had worked at the commissary until about 2 a. m. and had slept until 4:30 when he was awakened that he might take pickets to the picket lines.

Policemen testified there was a substance that looked like fine white mortar powder on the clothing of one of the men. Particles of mortar and brick were found on the rear seat of the car and also on its floor along with dirt, gravel dust, fragments of partly decayed wood, match stems, fragments of paper, etc. Both of the hub caps on the right side of the car were dented,

the rim of the right front wheel was bent and the tire scuffed, and there was dirt on the running board.

A few hours later in the day automobile tire tracks were noticed along the side of Alice Street where Mrs. Kruck had seen the car. North of that place and almost opposite the Kruck home the tracks apparently grazed a metal catch basin, which extended a few inches above the ground. It was the theory of the State that the persons who damaged the Kruck home traveled in the car seen shortly afterwards by Mrs. Kruck, that the tire tracks later discovered in the street were made by this car and that the catch basin could have scuffed the tires and bent the hub caps on said car.

Testifying for the State, members of the police department related that they were called to investigate broken windows in three other buildings in Sioux City during the same night the Kruck home was damaged. These were a house about one-half mile from the Kruck home, a store about one and one-half miles distant and a grocery store nearly two miles from the Kruck home and in the central business section of the city. The house was owned by a Swift employee, but there was no evidence concerning the identity of the owners or occupants of the store buildings.

The evidence relative to the crimes other than the one for which appellant was on trial was admitted over timely objections. Appellant predicates error upon these rulings.

In considering this assignment of error it should be borne in mind that, subject to certain exceptions, the general rule is that the State cannot prove the accused has committed a crime not alleged in the indictment as aiding the proofs of his guilt of the crime charged. State v. Vance, 119 Iowa 685, 94 N. W. 204; State v. Crabbe, 200 Iowa 317, 204 N. W. 272.

One of these exceptions is that evidence of other offenses is proper to establish motive. In the case at bar the State would not have been required to prove any motive prompting the commission of the crime charged. State v. Linde, 54 Iowa 139, 6 N. W. 168; State v. Meyer, 180 Iowa 210, 163 N. W. 244;

State v. Kneeskern, 203 Iowa 929, 210 N. W. 465. However, the State did introduce evidence of ill feeling on the part of appellant toward Kruck and evidence tending to indicate that the crime grew out of matters connected with the Swift strike. Consequently, the evidence that store buildings, owned presumably by strangers to the controversy and situated in other localities, were similarly damaged, as a practical proposition, could not have been introduced for the purpose of establishing motive because such evidence would tend to disprove the theory of the State on that point.

Under other exceptions proof of other crimes may in certain cases be admissible to show intent or absence of mistake or accident. But these exceptions are not applicable to cases of this character because intent may, in such cases, be inferred from the manner of the act charged and scienter and purpose are not of the essence of the issue. State v. Weaver, 182 Iowa 921, 166 N. W. 379; State v. Rounds, 216 Iowa 131, 248 N. W. 500; State v. Huntley, 204 Iowa 981, 216 N. W. 67. That there was here no substantial issue concerning intent or mistake or accident is indicated by the statement of appellant's counsel in open court in connection with his objections to the evidence, "proof of animus or maliciousness is not required as the act speaks for itself."

Still other exceptions to the general rule are that evidence of other crimes may be admissible if it tends to establish a common plan embracing the other offenses as well as the one with which the accused is charged, or if it tends to identify the accused as the person guilty of the crime charged.

However, in order that evidence of other crimes of the accused may be admissible under any of the exceptions to the general rule, there must be satisfactory proof that the accused was the person who committed the other acts in question. Obviously, evidence of crimes of third persons is not relevant to the issue. In the language of State v. Wackernagel, 118 Iowa 12, 14, 91 N. W. 761, 762, "* * * in the absence of a showing that defendant was guilty of * * * [the other crime] the evidence should not have been received, * * *."

State v. Yarham, 206 Iowa 833, 840, 221 N. W. 493, 496, states:

"Proof of similar transactions involving crime must be clearly shown. Mere suspicion is not enough. The evidence must be such that there can be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not."

See also State v. Carter, 112 Iowa 15, 83 N. W. 715; State v. Foxton, 166 Iowa 181, 147 N. W. 347, 52 L. R. A., N. S., 919, Ann. Cas. 1916E, 727; 20 Am. Jur. 299; and annotations in 3 A. L. R. 784.

The evidence concerning the identity of the accused as the person who committed the other crimes falls far short of meeting the foregoing test. Some of the missiles found in and about the other damaged premises were similar to those which had damaged the Kruck home but were likewise similar to those commonly found in the byways of practically every city and town in this section of the country. One of the missiles was a broken board. Certain fragments of partly decayed wood found in appellant's car were submitted as exhibits. There was no testimony tending to show they probably came from this particular board nor does an examination of them, by a nonexpert, lead to this conclusion. Apparently, they might as well have come from almost any pieces of old lumber. The one splinter which apparently came from this board was conceded to have been unintentionally broken from it during the trial.

The foregoing is the substance of the additional evidence having to do with the mischief to property other than the Kruck home. It was insufficient to constitute the clear proof of appellant's participation in said other acts which was essential to its admissibility. Therefore, the rulings admitting it were erroneous. This error was prejudicial to appellant and necessitates a reversal. If there is a retrial, the record will probably be somewhat different. We express no opinion rela-

tive to the sufficiency of the evidence to sustain a conviction nor upon other assignments of error.

The judgment is reversed.—Reversed.

All JUSTICES concur.