STATE of Iowa, Appellee,

v.

Dale Thomas ARMSTRONG and Shirley Buttolph, Appellants.

No. 53852.

Supreme Court of Iowa.

Jan. 19, 1971.

**206**

Upton B. Kepford, Waterloo, for appellants.

Richard C. Turner, Atty. Gen., Roxanne Barton Conlin, Asst. Atty. Gen., and David J. Dutton, Black Hawk County Atty., for appellee.

STUART, Justice.

A Black Hawk County jury convicted Dale Armstrong and his sister Shirley Buttolph of the crime of obtaining money by false pretenses in violation of section 713.1, 1966 Code. Each was sentenced to a term not to exceed seven years in the appropriate state reformatory.

Armstrong, under an assumed name and representing that he was an insurance agent for Wabash Life Insurance Company of Indiana, obtained a $6000 check from Mrs. Brimmer, age 82, as the first annual premium on a life insurance policy to be issued to her by Wabash. She later requested the return of the check. It was returned to her uncashed by registered mail from Rockford, Illinois.

Defendants do not challenge the sufficiency of the evidence, therefore only such further facts as are necessary to a discussion of the assigned errors will be stated where appropriate.

■■ I. The county attorney's information charged defendants with obtaining *money* under false pretenses. The evidence established that defendants received a check which was returned without having been cashed. Defendants claim this constitutes a fatal variance between the charge and the proof.

"In an indictment in which it is necessary to make an averment as to money, treasury notes or certificates, bank notes or other securities intended to circulate as money, checks, drafts or bills of exchange, it is sufficient to describe the same or any of them as money, without specifying the particular character, number, denomination, kind, species or nature thereof." Section 773.19, 1966 Code.

This section is made applicable to county attorney informations by section 769.13, 1966 Code.

It was therefore proper to use the term money in the information although a check was involved. The crime was complete when defendants obtained the check. The fact that the check was returned uncashed to Mrs. Brimmer upon her request makes no difference. The state need not prove pecuniary loss to establish the crime of obtaining money under false pretenses. State v. Huckins (1931), 212 Iowa 283, 291, 234 N.W. 554, 559; State v. LaVere (1922), 194 Iowa 1373, 1378, 191 N.W. 93, 95; State v. Jamison (1888), 74 Iowa 613, 616, 38 N. W. 509, 510–511.

■ II. On May 1, 1969 defendants filed motions to strike, in limine and to suppress. Hearings were held May 1, 1969 and July 11, 1969. At both hearings the state requested time to file a brief but did not do so. The rulings were finally made on August 18, 1969, the first day of trial. Defendants claim they were deprived of a fair trial and due process by the delay in ruling irrespective of the correctness of the ultimate rulings because counsel was unable to determine in advance of trial what evidence he should be prepared to rebut.

Defendants' authorities are on the general proposition of a fair trial. No authority is cited holding a delay in ruling on pretrial motions deprives defendants of a fair trial. Pretrial proceedings do not show they claimed the delay interfered in any manner with the preparation for trial. Counsel's concern was that no statement be made in opening statements referring to evidence he hoped to have excluded in the motion to suppress. We do not believe the delay in ruling on the motions was so damaging to defendant's case and so fatal to a fair trial that prejudice must be presumed. There is no merit in this contention.

III. Defendants claim the trial court erred in admitting the testimony of Mary Koep, Russell Lauterback, Minnie Fischer, Cora Sahr, Lee Patrick Murphy, William E. Schomberger and Florence M. Ehret.

The testimony of these witnesses related to other transactions than the one with which defendants were charged. The state claims the evidence was proper as tending to prove material issues in the case under the rule that relevant and material evidence is admissible even though the facts, in themselves, constituted a crime. State v. Agee (1965), 257 Iowa 1345, 1349, 136 N. W.2d 419, 421; State v. Schlak (1961), 253 Iowa 113, 116, 111 N.W.2d 289, 291; State v. Addison (1958), 249 Iowa 905, 909–910, 87 N.W.2d 916, 919.

"The state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial." State v. Vance (1903), 119 Iowa 685, 686–687, 94 N.W. 204; State v. Wilson (Iowa, 1970), 173 N.W.2d 563, 566; State v. Gill (1966), 259 Iowa 142, 145, 143 N.W.2d 331, 333; State v. Hatridge (1961), 252 Iowa 1116, 1120, 109 N.W. 2d 705, 708.

"It is established by the great weight of authority that, in a prosecution for obtaining money or property by false pretenses, or attempting to do so, evidence that the accused, at about the time of the offense charged, made similar false representations or engaged in similar fraudulent dealings, is admissible as tending to show a fraudulent intent or motive in the transaction on which the prosecution is based,—as where a plan or scheme to defraud other victims than the complaining person or persons is indicated." Anno: Evidence of Similar False Pretenses, 80 A.L.R. 1306, 1307; 78 A.L.R.2d 1359, see Underhill's Criminal Evidence, Fifth Edition, § 208, p. 485.

The admissibility of any such evidence rests largely in the trial court's discretion, State v. Wilson (Iowa, 1970), 173 N.W.2d 563, 566, but the "Proof of similar transactions involving crime must be clearly shown. Mere suspicion is not enough. The evidence must be such that there can be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not". State v. Yarham (1928), 206 Iowa 833, 840, 221 N.W. 493, 496.

The testimony of Mary Koep and Florence Ehret relates to the sale of other insurance policies in which these defendants were involved. This testimony was admissible under the exceptions to the general rule set out above.

The testimony of the other witnesses relates to transactions which occurred on July 3 and August 17, 1968. The following facts were established by their testimony.

On July 3, 1968, Armstrong and Wallace Hopkins went to the home of Minnie Fischer and Cora Sahr, elderly sisters in Hampton. They had had a friendly relationship over a period of years with these women and had borrowed money from them in the past. They told the sisters they would like to borrow some more money to start a picture album business. Each man received a check for $2000 and gave new promissory notes to each of the sisters to cover the loan and past obligations. There is no claim false pretenses were involved in this transaction. The trial court admitted the evidence on the theory that it tended to connect Armstrong with the events which followed.

Shortly after these two men left, a man using the name Bob Stone (later identified as David Northdurft who also used the alias Robert Schwartz) called on the sisters to sell them life insurance in the Wabash Life Insurance Company. They agreed to invest $10,000 each, but had to cash bonds to get the money.

At that time Minnie Fischer gave Stone a check for $500 without naming a payee. He was to hold the check until the $10,000 was obtained and it was then to be destroyed. Cora Sahr gave him a check for $1000 with the payee blank, to be held and not cashed.

The same evening these defendants were in a tavern in Riceville with Hopkins and Stone. Shirley Buttolph filled in the name "Robert Schwartz" on both checks as payee and wrote in the amounts. She also endorsed both checks "Robert Schwartz".

The five hundred dollar check was cashed in the tavern that night. "Shirley M. Buttolph" appears as an endorsement on the $1000 check which she claims to have deposited in her account at a later date and paid David Northdurft (Robert Schwartz or Bob Stone) part by check and part in cash.

On August 17, 1968, Bob Stone, after having called several times in the interim, returned to the sisters' home and was given two $10,000 cashier's checks. Minnie Fischer endorsed the one payable to her. It was used to buy a car from Schomberger Motor Company by David Northdurft who was given a check for the balance over. Cora Sahr endorsed the check payable to her. Under her endorsement was the endorsement "W. Hopkins".

Stone agreed to return the $500 and $1000 checks but did not do so. Neither of the sisters received a policy from Wabash. They were obviously swindled out of $21,-500.

Of course, only similar crimes committed by one or both of defendants are relevant or material to any issues involved in the charge in question.

"In order that evidence of other crimes of the accused may be admissible under any of the exceptions to the general rule, there must be satisfactory proof that the accused was the person who committed the other acts in question. Obviously, evidence of crimes of third persons is not relevant to

the issue." State v. Porter (1940), 229 Iowa 882, 886, 294 N.W. 898, 900; State v. Wackernagel (1902), 118 Iowa 12, 14, 91 N.W. 761, 762.

There is no claim Armstrong's transaction with the sisters was a crime. So far as the record shows it was a lending transaction evidenced by promissory notes. The court admitted the evidence, not as a similar transaction, but to connect Armstrong with subsequent events. Even if this theory would have made the evidence of Armstrong's visit relevant, there was no need to relate the details of the visit.

It is not claimed defendants participated actively in Stone's fraud on Minnie Fischer and Cora Sahr. Armstrong was connected only by the prior visit and the gathering in the tavern. Buttolph was connected by the fact that she completed both checks and endorsed and cashed one of them. No connection is shown with the two $10,000 payments. Although this evidence would have been relevant to connect all parties under a conspiracy charge, State v. Keul (1942), 233 Iowa 852, 856, 5 N.W.2d 849, 852, a conspiracy was not so clearly established that the fraud of Bob Stone (Robert Schwartz or David Northdurft) became admissible as a similar offense committed by either one or both of these defendants charged with obtaining money by false pretenses. See State v. Huckins (1931), 212 Iowa 283, 288–290, 234 N.W. 554, 557–558; State v. LaVere (1922), 194 Iowa 1373, 1381, 191 N.W. 93, 97.

After extensive research we have found no cases in which such nebulous connection of a defendant with the crime of another has been held to be material or relevant to any of the issues in defendant's criminal trial on another charge. We are of the opinion that the court erred in admitting evidence of the July 3 and August 17, 1968 transactions and evidence supportive thereto.

Other alleged errors are not likely to occur on retrial and need not be considered.

For the reasons urged in division III, the case is reversed and remanded for new trial.

Reversed and remanded.

MOORE, C. J., and MASON, RAWLINGS, BECKER, LeGRAND and REES, JJ., concur.

LARSON, J., dissents from Division III and the result.

UHLENHOPP, J., takes no part.