**STATE of Iowa, Appellee,**

v.

**Wallace Eugene HOPKINS, Appellant.**

**No. 54589.**

Supreme Court of Iowa.

Dec. 15, 1971.

Review Denied Jan. 22, 1972.

Upton Kepford, Waterloo, and Lawrence Gilchrist, Hampton, for appellant.

Richard C. Turner, Atty. Gen., James W. Hughes, Asst. Atty. Gen., Lee Blum, County Atty., for appellee.

MASON, Justice.

Wallace Eugene Hopkins, Dale Armstrong and Shirley Buttolph were charged by a county attorney's information in separate counts with the crime of false pretenses contrary to section 713.1, The Code and with conspiracy contrary to section 719.1.

It was alleged in count I that between June 15 and August 17, 1968, Hopkins, Armstrong and Mrs. Buttolph with intent to defraud, aided and abetted David Lee Nothdurft in obtaining $11,000 from Cora Sahr by means of false pretenses and fraud.

In count II it was alleged Hopkins and the others conspired together and with David Lee Nothdurft to obtain $11,000 from Cora Sahr by means of false pretenses and fraud.

Hopkins, Armstrong, Mrs. Buttolph and David Nothdurft were the sole parties alleged to be involved in the conspiracy to defraud charged in this count.

Following his plea of not guilty Hopkins was separately tried by a jury and convicted of both counts. The Franklin district court sentenced Hopkins upon his conviction of false pretenses to the state penitentiary for a term not to exceed seven years and for a term not to exceed three years on the conspiracy charge. The sentences were to run concurrently. Hopkins was ordered to pay the costs of the prosecution.

Inasmuch as we are concerned only with Hopkins' appeal, at times he will be referred to as defendant.

In the only error assigned defendant questions the court's rulings admitting testimony of the State's witnesses over his objections.

He maintains admission of testimony of Cora Sahr and Minnie Fischer with reference to loans made by them to him and Armstrong in March 1965 and in July 1968 was reversible error. Hopkins argues admission of testimony with respect to certain insurance transactions involving Mary Koep also constitutes reversible error.

The statutes upon which the information is based follow:

"713.1. False pretenses. If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned in the penitentiary * * *."

"719.1. 'Conspiracy' defined—common law. If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the person, character, business, property, or rights in property of another, or to do any illegal act injurious to the public trade, health, morals, or police, or to the administration of public justice, or to commit any felony, they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law, shall be imprisoned * * *."

The testimony complained of related to other transactions than the one with which defendant was charged.

The State maintains Mary Koep's testimony was admissible to show intent and motive and evidence of the lending transactions which occurred in March of 1965 and July of 1968 was admissible to show Hopkins' conspiratorial conduct and the manner in which he aided and abetted commission of the crime of obtaining money by false pretenses from Cora Sahr.

In State v. Armstrong, 183 N.W.2d 205, 207–209, (Iowa 1971), in discussing competency of evidence of other reasonably similar or like offenses by defendant to the one on which the prosecution is based, this court said:

" 'The state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial.' * * * [citing authorities]

" 'It is established by the great weight of authority that, in a prosecution for obtaining money or property by false pretenses, or attempting to do so, evidence that the accused, at about the time of the offense charged, made similar false representations or engaged in similar fraudulent dealings,

is admissible as tending to show a fraudulent intent or motive in the transaction on which the prosecution is based,—as where a plan or scheme to defraud other victims than the complaining person or persons is indicated.' * * * [citing authorities]."

■ Defendant recognizes the principles enunciated in the Armstrong opinion and admits that by way of proof with respect to the false pretense charge, evidence of other like or similar false pretense offenses, if not too remote, is admissible to establish certain elements of the crime charged such as motive or intent providing the extraneous testimony offered is in no manner speculative. Hopkins argues the commission of such other offenses must be established beyond a reasonable doubt. His contention in respect to proof beyond a reasonable doubt being required for admissibility is without merit.

In State v. Armstrong, 183 N.W.2d at 208, we quoted with approval this statement from State v. Yarham, 206 Iowa 833, 840, 221 N.W. 493, 496:

" '* * * Proof of similar transactions involving crime must be clearly shown. Mere suspicion is not enough. The evidence must be such that there can be no room for speculations in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not.' "

In reference to count II charging conspiracy to defraud, although conceding evidence of other like offenses, other conspiracies to defraud, might be used to establish motive or intent, defendant argues attempts to show another claimed conspiracy other than one involving fraud are inadmissible.

Some recital of events leading to the charges made in the information could be helpful to an understanding of the relationship of the challenged evidence to that offered in support of the principal offense and the object of the conspiracy.

David Nothdurft, who had been convicted of two felonies involving obtaining money by false pretenses from Cora Sahr and Minnie Fischer, testified as a State's witness. He became acquainted with defendant when both were selling insurance in Florida. Nothdurft first heard of Mrs. Sahr and Miss Fischer in the summer of 1968 after he and Hopkins had returned to Iowa with a plan to sell insurance. Whether the plan was actually formulated in St. Louis or after arrival in Iowa is not entirely clear from the record. However, this fact is not deemed important. Nothdurft testified that under the arrangement they were going to sell for Wabash Life Insurance Company although neither was licensed by that company. Defendant was to furnish names of old customers and Nothdurft was to do the selling and the commissions were to be split fifty-fifty.

Before talking to the sisters the first time at their home in Hampton, Nothdurft talked to Hopkins, Dale Armstrong and Shirley Buttolph so that he might be better versed on the past history of the sisters with insurance in order to make a better presentation. Hopkins told Nothdurft he was acquainted with these ladies through selling them insurance in several companies; they were financially able.

Nothdurft met with Hopkins, Armstrong and Mrs. Buttolph at a Hampton restaurant before going to the sisters' home the first time. After some conversation with these three, Nothdurft went to the home and introduced himself as "Robert Stone" saying he was representing Bankers Life and Casualty. After talking with the two ladies about insurance, Nothdurft was given two checks, one for $1000 and one for $500, both payable to Bankers Life and Casualty. Nothdurft then returned to the others and discussed this situation. It was later decided the checks should be returned without making an effort to place the insurance through Bankers Life. In returning the checks, the name "Robert Stone" was placed in the return address on the envelope. The other three were present when this was

done and all were aware Nothdurft was using the name "Robert Stone" and that the checks were being returned.

Following some later telephone calls to the sisters, Nothdurft made another visit to their home July 3, 1968. Defendant was with Nothdurft in Hampton but didn't go to the home. On this occasion Nothdurft again used the name "Robert Stone" but represented himself as being an agent of Wabash Life Insurance Company. As a result of this visit, Nothdurft obtained checks in the amount of $1000 and $500 with the name of the payee left blank. These checks were given as a down payment on a $10,000 premium policy for each of the ladies.

After receiving the checks, Nothdurft, defendant, Armstrong and Mrs. Buttolph met at a tavern in Riceville, Iowa. Before entering the tavern the matter of cashing the checks was discussed by all four. Eventually, Mrs. Buttolph wrote the name "Robert Schwartz" as payee and endorsed each check with that name. Only the $500 was cashed in Riceville. The proceeds of that check were divided equally. The $1000 check was taken by Mrs. Buttolph to her bank for deposit. She received approximately $500 in cash and the rest was deposited in her account. Nothdurft received his one-fourth share of the $1000 check from the cash.

Some time later Nothdurft returned to Hampton and received two checks for $10,-000 each from Mrs. Sahr and Miss Fischer. The proceeds of these checks were later divided between the four, although not equally. Neither Mrs. Sahr nor Miss Fischer received any policies for the $21,500 given to Nothdurft.

I. Defendant's attack on the admission of Miss Koep's testimony is based on the contention there was no showing with the certainty required that a public offense had in fact been committed and in order to so conclude the jury would be required to resort to speculation.

Mary Koep, 80, from Belle Plaine testified as a State's witness that Hopkins and a person he introduced as Mary Miller came to her home to talk with her about an insurance policy in Wabash Life Insurance Company. Hopkins came into the house first and told Miss Koep he had someone who wanted to talk to her. At this point he called in a person whom he introduced as Mary Miller (later identified as Shirley Buttolph). At the end of their visit Miss Koep gave Hopkins a check for $500 leaving the name of the payee blank. She was given a receipt for the $500 and was to receive her policy in about two weeks.

When questioned about leaving the name of the payee blank, Miss Koep testified, "No, I'll tell you. He didn't sign it at home. And I said 'well, you never signed the Wabash Life Insurance Company.' He says, 'the company wants their own stamp on it.' and I said, 'if you don't sign this most anybody could cash it, you know.' and he said that the company wanted their own stamp put on it. And then I noticed that he cashed it in Rock Island the same day." When the cancelled check was returned to her, Hopkins' name appeared as payee.

Later, one evening Hopkins called Miss Koep to inquire if she had received her policy. When she told him, "No," he again told her she would receive it in about two weeks. Miss Koep heard nothing further until May 1 when Mary Miller returned to Miss Koep's home without Hopkins and told her the premium should be $1000 instead of $500 because of her age. Miss Koep gave another check to Mary Miller for $500, again leaving the name of the payee blank. Mary Miller tore up the original receipt for $500 and gave Miss Koep a new receipt for $1000. No papers other than the receipt mentioned were left with Miss Koep on either occasion.

Sometime in June Miss Koep received a policy from the Wabash Life Insurance Company showing a premium payment of $500. February 4, 1969, she was delivered a check for $1000 from this company by an

agent of the Iowa Bureau of Criminal Investigation.

Miss Koep testified the Wabash policy and the check mentioned were delivered after she had made complaint to the State Insurance Company in Des Moines. In the case of the check, it was not delivered until some months later. (Undoubtedly, the witness was referring to the insurance department of Iowa. Chapter 505, The Code.)

Both transactions with Miss Koep related to others than the one with which Hopkins was charged.

■ Examination of the record compels the conclusion the evidence bearing on the February 1968 incident met the requirements set forth in State v. Yarham, supra. It cannot be logically argued that the evidence left room for speculation in the minds of the jurors whether the crime of false pretenses had been committed. The evidence was admissible under the principles stated in State v. Armstrong, supra, to show Hopkins' fraudulent intent or motive in the transaction upon which the present prosecution is based. The court did not err in this respect.

■ The May occurrence in which only Mrs. Buttolph appeared at the Koep home presents a different question.

In State v. Armstrong, supra, the court considered the admissibility of substantially the same testimony then offered by Mary Koep in the prosecution of Shirley Buttolph. The court found the testimony to be admissible under the State v. Yarham standard to show the intent of Shirley Buttolph.

The question arises whether the testimony is competent as regards Hopkins in view of the principle that, " 'In order that evidence of other crimes of the accused may be admissible under any of the exceptions to the general rule, there must be satisfactory proof that the accused was the person who committed the other acts in question. Obviously, evidence of crimes of third persons is not relevant to the issue.'

* * * [citing authorities]." State v. Armstrong, 183 N.W.2d at 208–209.

However, the February and May events were so related to each other that proof of one might reasonably tend to prove the other. The May incident formed only a part of the entire scheme participated in by defendant and Mrs. Buttolph to obtain money from Miss Koep.

There are ample circumstances to support a jury's finding that a conspiracy existed between defendant and Mrs. Buttolph to obtain money by false pretenses from Miss Koep as that term is defined in our cases. See State v. Schenk, 236 Iowa 178, 183, 18 N.W.2d 169, 172 and State v. Thompson, 241 Iowa 16, 22–23, 39 N.W.2d 637, 641.

Evidence relating to the May incident as well as that bearing on the February occurrence was properly received as tending to show Hopkins' intent or motive in the transaction charged in the information. These three events had features in common.

Defendant's attack on the admissibility of Miss Koep's testimony based on the contention urged in this division cannot be sustained.

II. Testimony of Cora Sahr revealed that in March 1965 Hopkins and Dale Armstrong borrowed money from the witness and her sister, Minnie Fischer, to be invested in starting the American Security Benevolent Association. July 3, 1968, the sisters made another loan to Hopkins and Armstrong to be invested in the American Heritage Album Company. The loans in each case were evidenced by promissory notes given by defendant and Armstrong.

Defendant claims the events attested to are remote, irrelevant and immaterial to any issue in the case and their admission into evidence, prejudicial.

He contends the loans made by Cora Sahr and Minnie Fischer to him and Armstrong were merely lending transactions and his activities surrounding the making of the loans did not constitute a public offense. Hopkins further argues even if his

activities were held admissible they were too remote in time to be relevant as there was no evidence of a conspiracy existing from 1964 to the point in time when David Nothdurft first contacted the sisters.

Defendant first argues admissibility of evidence relating to the 1965 and 1968 lending transactions cannot rest on the theory those transactions were similar to the one under inquiry because his activities surrounding those transactions did not constitute a public offense. Even if it were to be conceded there is no claim false pretenses or fraud was involved in either event, defendant's argument does not resolve the problem since the court's ruling is not based on such theory.

His next argument concerns the conspiracy count. In this connection we call attention to the fact the trial court does not purport to admit Cora Sahr's testimony as evidence of actual existence of a conspiracy, but states, " * * * [T]he Court believes that the history of the relationship between this defendant and the alleged victim and complaining witness, in order to establish the relative status of the parties, [is admissible] to establish the background of their relationship. *With the alleged conspiracy being an alleged outgrowth of this relationship*—the Court does overrule the objection * * * and will permit the State to inquire into the acts and declarations of the defendant to and with the complaining witness. * * *." (Emphasis supplied)

The court properly determined admissibility on the basic principle of relevancy. See State v. Wright, filed November 11, 191 N.W.2d 638, (Iowa 1971).

McCormick suggests "that the most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence*?" (Emphasis in the original). See McCormick on Evidence, section 152.

Along this line the State argues it had the burden to show the manner in which defendant aided and abetted commission of the crime charged and show his conspiratorial conduct. It contends Hopkins' acquaintance and relationship with Mrs. Sahr was relevant for this purpose, pointing out that before Nothdurft's first trip to the Sahr home Hopkins informed him of the past history of the sisters in insurance and money matters from knowledge gained through his contacts with them.

We agree evidence of the 1965 transaction was relevant for the purpose of tending to establish Hopkins, because of his acquaintance and previous contacts with the sisters, was exceptionally qualified to effectively aid and abet and conspire with Nothdurft in obtaining money from them through false pretenses and fraud since from knowledge thus gained, Hopkins knew the method to be employed to accomplish this object. The evidence when offered for this purpose rendered the inference Hopkins committed the offenses charged more probable than it would be without such evidence. It therefore meets the test of relevancy offered by McCormick, supra.

Having probative value or relevancy on the issue stated, the evidence was admissible to be weighed by the jury along with other evidence in determining one fact from the existence of another in their process of reaching their verdict. See 1 Wigmore on Evidence, Third Ed., section 12.

It will be recalled the 1968 loans were made earlier the day Nothdurft returned to the Sahr home to obtain the second checks for $1000 and $500 under the representation he was then working for Wabash Life Insurance Company. We find no logical distinction between evidence of this transaction and that offered bearing on the 1965 loan insofar as relevancy and admissibility are concerned.

The trial court's ruling admitting evidence as to both transactions was correct.

In State v. Armstrong, 183 N.W.2d 205, 208, (Iowa 1971), evidence of the same 1968 transaction was offered on a completely dif-

ferent theory of admissibility. We find nothing in conflict with our holding there and the one in the case before us.

Finding no error, the case is

Affirmed.

All Justices concur, except UHLEN-HOPP, J., who takes no part.