**STATE of Iowa, Plaintiff-Appellee,**

v.

**Loren RIPPERGER,
Respondent-Appellant.**

**No. 86–319.**

Court of Appeals of Iowa.

May 28, 1987.

John P. Roehrick of Roehrick, Hulting & Moisan, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Gregory L. Biehler, Asst. Polk Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ., but considered en banc.

SNELL, Judge.

On August 8, 1985, the appellant, Loren Ripperger, was charged by trial information with committing lascivious acts with a child. *See* Iowa Code § 709.8 (1985). Trial commenced on January 6, 1986. Prior to trial, Ripperger filed a motion in limine seeking to exclude certain medical testimony. The district court overruled the motion in limine and the jury returned a verdict finding Ripperger guilty as charged. Following an unsuccessful motion for new trial, Ripperger was sentenced, on February 14, 1986, to an indeterminate term not to exceed two years. This appeal followed. Our review is limited to the correction of errors at law. Iowa R.App.P. 4. The admissibility of the evidence at issue rests largely in the trial court's discretion. *State v. Johnson,* 224 N.W.2d 617, 620 (Iowa 1974). We will not reverse if the trial court's ruling can be sustained on any ground. *State v. Baker,* 293 N.W.2d 568, 574 (Iowa 1980).

Ripperger contends the allowance into evidence of the testimony at issue violates Iowa Rule of Evidence 404(b) and the cases which have interpreted that rule. The testimony with which we are concerned was given by Dr. David L. Thornton, an expert witness for the State. Prior to Dr. Thornton's testimony the alleged victim, Ripperger's five-year-old step-granddaughter, had

given an affirmative response when asked if the defendant had "ever put his finger inside of you?" Although the victim did not testify as to whether this occurred on the date of the assault for which Ripperger was charged or at some time prior to that date, Ripperger and the State have characterized Dr. Thornton's testimony as evidence of past crimes. Dr. Thornton testified that he had examined the victim nine days after the alleged acts had occurred. He stated both that the victim's vaginal caliber was abnormally wide and that this condition is consistent with digital penetration. Ripperger claims on appeal, as he did by way of pretrial motion in limine and objection during trial, that the allowance of this testimony violates Iowa Rule of Evidence 404(b).

The general rule is that "one crime cannot be proved by proof of another." *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979) (quoting *State v. Schlak*, 253 Iowa 113, 115, 111 N.W.2d 289, 291 (1961)). The purpose of the rule is to exclude from the jury's consideration evidence which has no relevancy except to show that the defendant is a bad person and thus likely committed the crime in question. *Id.* This rule is codified as Iowa Rule of Evidence 404(b). *See* Iowa R.Evid. 404(b), federal advisory committee's notes. That rule reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The exceptions to this rule are based upon the relevancy of certain evidence to the proof of some fact or element in issue other than the defendant's criminal disposition. *Cott*, 283 N.W.2d at 326. The test of admissibility under an exception to rule 404(b) is two-pronged. First, the evidence must be relevant to one or more of the issues for which exceptions are recognized. *State v. Walsh*, 318 N.W.2d 184, 185 (Iowa 1982). Second, the probative value of the

evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *State v. Munz*, 355 N.W.2d 576, 579 (Iowa 1984).

In addition to those bases for admission specifically enunciated in rule 404(b), the supreme court of this state has recognized an exception applicable to the context of sex crime cases. In *State v. Spaulding*, 313 N.W.2d 878 (Iowa 1981), the court reaffirmed its position that an exception to rule 404(b) exists for evidence offered " 'in order to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial.' " *Id.* at 880 (quoting McCormick's Handbook on the Law of Evidence, § 190 at 449 (2d Ed. E. Cleary 1972)). This exception is applicable in the context of prosecutions for lascivious acts with a child. *State v. Maestas*, 224 N.W.2d 248, 250 (Iowa 1974). Dr. Thornton's testimony was that the victim's vaginal condition was consistent with the victim's claim that digital penetration had occurred.

If in fact the victim's testimony relates to events occurring on the date of the offense for which Ripperger was charged, his objections to the testimony are misplaced. If this is the victim's claim, then Dr. Thornton simply gave corroborating testimony about physical evidence that a crime had been perpetrated on the child victim. His testimony regarding the victim's vaginal condition is consistent and corroborative of her testimony that defendant penetrated her digitally. The crime of lascivious acts with a child of which defendant is charged includes "(1) fondle or touch the pubes or genitals of a child." Iowa Code § 709.8(1) (1985). Dr. Thornton's testimony meets the relevancy criteria established by Iowa Rule of Evidence 401. That rule states "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

If, however, the victim's testimony relates to digital penetration perpetrated by Ripperger on a previous occasion, we think

Dr. Thornton's testimony comes within the "illicit sexual relations" exception reaffirmed by *Spaulding.* Although Dr. Thornton's testimony did not identify Ripperger as the perpetrator of the penetration, we think the fact that the testimony corroborated, and was corroborated by, the victim's testimony that Ripperger was the perpetrator provides the nexus of relevancy to this exception.

Ripperger contends Dr. Thornton's testimony violates the rule which requires clear proof of the alleged prior sex acts. *See e.g., State v. Spargo,* 364 N.W.2d 203, 209 (Iowa 1985). This, argues Ripperger, is because Dr. Thornton did not identify Ripperger as the perpetrator of the digital penetration. We note that the purpose of the rule argued by Ripperger "is to prevent the jury from engaging in speculation or drawing inferences based on mere speculation." *Id.* Although commission of prior acts need not be established beyond a reasonable doubt, *id.,* the evidence must be clear and complete enough to allow the jury to find commission of the prior act without resorting to speculation or mere suspicion. *Id.* We look to the totality of the relevant circumstances to determine whether sufficient proof of the prior act has been demonstrated. *See Johnson,* 224 N.W.2d at 620–21.

Dr. Thornton is a pediatric physician possessing extensive training and experience in the examination of childhood victims of sexual abuse. No one disputes his qualifications to perform the examination; nor are his qualifications as an expert witness questioned on this appeal. The victim's testimony alleged Ripperger had perpetrated digital penetration upon her. This testimony corroborated that given by Dr. Thornton which, in turn, corroborated the victim's. Contrary to Ripperger's contention we believe Dr. Thornton's testimony, far from inviting the jury to speculate, actually reduced the possibility of speculation which may have resulted from the victim's otherwise unsupported claim. It would be quite anomalous for our law to allow such testimony from a victim, *e.g., Spaulding,* 313 N.W.2d at 880, while rejecting evidence which corroborates the youthful victim's claim. We think the potential for speculation arising from Dr. Thornton's testimony insufficient to warrant a finding of error. *See Spargo,* 364 N.W.2d at 209; *see also Spaulding,* 313 N.W.2d at 881–82 (probative value of prior acts testimony increased where testimony corroborates victim's claim).

In this respect we find support for our decision in *State v. Hilleshiem,* 305 N.W.2d 710 (Iowa 1981). In *Hilleshiem,* the defendant was charged with beating a two-year-old child to death. *Id.* at 711. Defendant challenged the State's use of evidence of bruises on the victim which preexisted the assault which resulted in the victim's death. *Id.* at 714. The bruises were not linked by the evidence to either the defendant or the cause of death. *Id.* Our supreme court refused to "find the evidence inadmissible as an improper attempt to adduce proof of other crimes" perpetrated on the victim by defendant. *Id.* The court held the evidence to be circumstantial evidence of the defendant's relationship with the victim which the jury was entitled to consider in determining credibility. *Id.* We think this rationale applies as well to the case at bar.

Nor do we think the failure of the victim to testify to the date of the alleged penetration fatal to the district court's ruling. While remoteness in time is certainly a consideration relevant to the balance of probative value and prejudicial effect, *Spargo,* 364 N.W.2d at 209, it clearly is not the only consideration. *Id.* Because the victim in this case was five years old at the time of trial, and four years old on the date the charged offense allegedly took place, we are presented with a factually-imposed limit of four to five years previous to trial during which the alleged penetration must have occurred. Longer time periods have not constituted a bar to admissibility in previous cases. *State v. Maestas,* 224 N.W.2d 248, 251–52 (Iowa 1974) (ten and six years); *see Spargo,* 364 N.W.2d at 203 (three to seven years).

Given our determination of the evidence's relevance, we must next consider and decide whether this relevance is substantially outweighed by the danger of un-

fair prejudice. *Munz,* 355 N.W.2d at 579. For purposes of this balance, "prejudice" refers to the likelihood of an undue tendency to suggest decision on an improper basis. *See* Iowa R.Evid. 403, federal advisory committee notes. For us to reverse the district court's decision on this issue as an abuse of discretion, Ripperger must show that the trial court's action was unreasonable in light of attendant circumstances. *Cott,* 283 N.W.2d at 329.

In light of the circumstances of this case, including those discussed above, we cannot say the trial court abused its discretion in allowing the testimony. *Cf. People v. Wertz,* 145 Cal.App.2d 395, 302 P.2d 613 (1956) (testimony of third party that he had observed defendant committing sex act on victim on occasion prior to, and different from, occasion charged in present indictment held admissible as proof of prior similar act).

The district court is affirmed.

AFFIRMED.

All Judges concur except SACKETT and SCHLEGEL, JJ., who dissent.

1. Over objection, Dr. David Thornton, a pediatric physician, testified with reference to a physical examination conducted on the victim some nine days after the alleged incident. He testified about the victim:

> Q. Doctor, can you tell us what your impression was, based upon your physical exam, of the victim? A. She had an abnormal vaginal caliber, which means that the opening to the vagina was quite a bit larger than it should have been. It was fairly obvious.... So my impression was that she had been dilated with some object. There was also some suggesting that the hymen had been stretched and that it was not continuous.... When you get to 4 millimeters, it's suspicious, and that's when we use a caliper, and hers was above 4 millimeters.... When we did do the vaginal exam, the vaginal tone was also decreased, so when you stick something in the vagina and press down close to your wall so you can get a better look, it gave open easier than we expect it to. In a normal child, it's very difficult to get any relaxation. In this case, the opening opened quite easily and with minimal discomfort.
>
> Q. Do you have an opinion, to a medical degree of certainty, as to whether the size of her vaginal orifice is consistent with digital penetration? A. It would be consistent with that.
>
> &ast; &ast; &ast; &ast; &ast; &ast;

SACKETT, Judge (dissenting).

I have no disagreement with the majority's opinion except I cannot find in this record clear proof defendant engaged in a series of acts over a period of time with the victim. The objectionable medical evidence indicates someone penetrated the victim in a series of episodes and repeated times.

Defendant is charged with indecent contact with a child. The crime with which defendant is charged does not require penetration nor is there any evidence of penetration of the victim by defendant at the time of the alleged indecent contact.

The medical evidence [1] defendant objected to clearly indicates the victim's vagina had been dilated by some object and her hymen had been stretched and was not continuous. The medical evidence was also clear that this occurred *over a series of episodes* and *would have been done repeated times.* However, there is *no* evidence connecting *this defendant* with penetration of the victim's vagina in a series of episodes or repeated times.[2]

The doctor's testimony about vaginal stretching is highly prejudicial. *State v.*

> ... A. My best medical opinion would have been that it would have been over a series of episodes. If it would have been a recent episode, we would have expected some trauma. For dilation like that to occur, we would think it has been done repeated times, especially with the vaginal laxia.
>
> Q. So you are not talking about one penetration? A. No. My best estimate would be it would have been more than one.
>
> Q. Over what period of time? A. There would be no way to know. It can be over a year or two.... [T]here was no recent evidence of trauma.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q. That could be any object then other than a digital penetration?
> A. True.
> Q. In fact, you can't say that in fact there was digital penetration, can you? A. No, I can't.

2. At trial the victim testified (using a doll) that on the day in question defendant touched her between her legs and had her touch him. The victim testified further:

> Q. [D]id Loren ever touch you before the last time you were there? Did he ever touch you between the legs before? A. Yes.
> Q. Where did he touch you before? A. In the same place.

*Spaulding,* 313 N.W.2d 878, 881 (Iowa 1981). The evidence clearly allows the jury to speculate that defendant was involved in a series of episodes or incidents with the victim. *See State v. Johnson,* 224 N.W.2d 617, 620 (Iowa 1974). In balancing the probative value of other crimes evidence against its potential prejudice, the court must consider the strong tendency on the part of the jury to use the evidence for an improper purpose. *See State v. Roth,* 403 N.W.2d 762, 766 (Iowa 1987).

Clarity and certainty is required in order to admit evidence of prior acts as an exception to Iowa R.Evid. 404(b):

> The proof of similar transactions involving crime must be clearly shown. More suspicion is not enough. *The evidence must be such that there can be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not.* (Citations omitted.) However, commission of such offenses need not be established beyond a reasonable doubt.

*State v. Fetters,* 202 N.W.2d 84, 92 (Iowa 1972) (citations omitted) (emphasis added). *See State v. Spargo,* 364 N.W.2d 203, 209 (Iowa 1985). In *Johnson* the court stated:

> Proof of the other offenses must be clear. "Mere suspicion is not enough. There must be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not." *State v. Yarham,* 206 Iowa 833, 840, 221 N.W. 493, 496 (1928). As part of this burden, *the State must present clear proof that the defendant was culpable in the other* acts in question. Crimes of third persons are not relevant. *State v. Armstrong,* 183 N.W.2d 205, 209–209 (Iowa 1971), cert. denied, 414 U.S. 857, 94 S.Ct. 163, 38, L.Ed.2d 108; *State v. Porter,* 229 Iowa 882, 886, 294 N.W. 898, 900 (1940); *State v. Wackernagel,* 118 Iowa 12, 14, 91 N.W. 761, 762 (1902); see *State v. Hopkins,* 192 N.W.2d 747, 749 (Iowa 1971); cf. *United States v. Spica,* 413 F.2d 129, 131 (8 Cir.1969) ("it is essential to the admissibility of another distinct offense that the proof be plain, clear, and conclusive, and evidence of a vague and uncertain character is not admissible)."

\* \* \* \* \* \*

In McCormick on Evidence, supra, § 190 at 453–454, the author summarizes the considerations involved in this balancing process:

> "... [T]he problem is ... one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the *convincingness of the evidence* that the other crimes were committed and that *the accused was the actor,* and the strength or weakness of the other-crimes evidence is supporting the issue, and on the other, the degree to which the jury will probably be aroused by the evidence to overmastering hostility.
>
> "Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. Discretion implies not only leeway but responsibility. A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion."
>
> ... Without question the level of prejudice inherent in this type of evidence is high.

Q. *[D]id Loren ever put his finger inside of* you? A. Yes.

**698**

*Johnson,* 224 N.W.2d at 620 (emphasis added). *See State v. Munz,* 355 N.W.2d 576, 579 (Iowa 1984); *State v. Tharp,* 372 N.W.2d 280, 282 (Iowa App.1985).

The only evidence of defendant being involved in any sex act with the victim other than the act for which he was charged was the victim's answer "yes" to the leading question, "Did Loren ever put his finger inside you?" The answer to this question is not sufficient to connect the defendant to dilation which occurred from a series of events over a period of time. Defendant points out the term inside her was not defined or demonstrated to the jury. The state does argue there is little doubt but that the victim meant defendant inserted his finger in her vagina. There was testimony the victim knew what her vagina was. However, what she said could arguably be construed as meaning the defendant put a finger in other body orifices.

In addition, the victim's testimony of the defendant's putting a finger inside her came in through an answer given by the victim to a leading question. While leading questions may be proper and necessary where the witness is of tender age and testifying as to some form of sexual abuse there is a potential for influencing the testimony of a person the victim's age.[3] *See State v. Mueller,* 344 N.W.2d 262, 267 (Iowa 1983).

The trial court also did not state the basis on which the evidence was admitted. I have reviewed the record for additional evidence to support the trial court. Exhibits excluded from the jury's consideration can properly be considered by the court in determining the probative value of a witness' testimony. *Spargo,* 364 N.W.2d at 209. I viewed two video tapes made of the victim being questioned by police officers and social workers about the abuse, one on January 22, 1985, and one on May 21, 1985. There is no reference made by the victim on either videotape about anything other than touching. The victim does not testify on either tape the defendant put his finger

inside her or penetrated her vagina in any manner at any time.

The doctor's testimony lacks probative value because the defendant's culpability for it is *not* clearly shown. The evidence falls short of the clear proof necessary to prove defendant was responsible for the dilation the doctor determined occurred from *repeated incidents or a series of episodes.* To be admissible, the evidence must be complete enough to find the commission of a prior sex act by defendant without resorting to *speculation* or mere suspicion. *Spargo,* 364 N.W.2d at 209.

I would find under this record the trial court abused its discretion in admitting the evidence and would reverse and remand for new trial.

SCHLEGEL, J., joins this dissent.

**3.** The child was born April 13, 1980. The alleged incident happened January 19, 1985. She

testified on January 6, 1986.