STATE of Iowa, Appellee,

v.

Troy Patrick SHEARON, Appellant.

No. 88–834.

Court of Appeals of Iowa.

Oct. 5, 1989.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Nan Horvat, Asst. County Atty., for plaintiff-appellee.

Richard O. McConville and Lawrence Scalise of Scalise, Schism, Sandre & Uhl, Des Moines, for defendant-appellant.

Heard by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

DONIELSON, Presiding Judge.

A jury found Troy Shearon guilty of first-degree murder and first-degree robbery after hearing testimony that he fatally stabbed a Des Moines tavern owner named Ray Myers and then took some of Myers' money. Shearon admitted killing Myers but claimed he was acting in self-defense after Myers tried to strangle him.

On appeal Shearon first contends the trial court erred in disallowing testimony by a woman who said the victim had attempted to rape her less than two hours before his own death. Shearon submits this evidence is admissible to support his claim of self-defense and that the trial court incorrectly determined that its prejudicial impact would outweigh its probative value.

Shearon also asserts that even though the jury heard testimony that he took some of Myers' money after killing him, the evidence is insufficient to support a conviction for first-degree robbery. He argues Iowa Code section 711.1 defines robbery as requiring the intent to take property from "another." Shearon asserts the term "another" implicitly means "person," and a corpse is not a person within the meaning of the statute.

Finally, Shearon assigns error to the trial court's refusal to suppress evidence which consisted of observations and photographs made of Shearon's body on the day of his arrest. This evidence was apparently taken to record signs of any injuries that might have been caused by Myers' alleged attack on him. Shearon says this evidence was taken without his consent and in the absence of exigent circumstances.

■ I. *Character Evidence.* Shearon challenges the trial court's decision not to allow Ms. Coaklay to testify about the victim's attempt to sexually abuse her less than two hours before his death. The admissibility of this evidence rests largely in the trial court's discretion. *State v. Ripperger*, 409 N.W.2d 693, 693 (Iowa App. 1987). We will reverse a trial court's determination on the issue of admissibility, only when we find a clear abuse of discretion. *State v. Roth*, 403 N.W.2d 762, 765 (Iowa 1987). This is a difficult standard to meet. *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985). We will not reverse if the trial court's ruling can be sustained on any ground. *Ripperger*, 409 N.W.2d at 693.

The test for admission of evidence is two-fold: (1) the evidence must be relevant, Iowa R.Evid. 401, and (2) if the evidence is relevant the trial court must determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice if the evidence is admitted. Iowa R.Evid. 403. Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the action, more or less probable than it would be without the evidence. *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988). "The test is whether a reasonable person might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." *Id.* For relevant evidence to be excluded pursuant to Iowa R.Evid. 403, the probative value of the evidence must be *substantially* outweighed by the risk of prejudice if the evidence were to be admitted.

The trial court in this matter concluded the prejudicial impact of Ms. Coaklay's testimony would outweigh its probative value. Essentially, Ms. Coaklay was prepared to testify that she entered the victim's bar at approximately 10 p.m. on October 1, 1987, and the victim offered to buy her a drink or two and to give her a ride to meet one of her friends. The victim apparently drove Coaklay to a rural area. He hit her and attempted to sexually abuse her, but Coaklay was able to escape from his car and she fled into a cornfield.

Even though Shearon was not aware of the victim's earlier episode with Coaklay at the time of his confrontation with the victim, he argues evidence of the episode should have been admitted at trial. Shearon contends Coaklay's testimony would have been evidence of the violent, dangerous, turbulent, and quarrelsome nature of the victim, and specifically it would have cast light on the victim's emotional state when he met shortly thereafter with Shearon at his bar. Shearon argues this testimony was relevant to show his state of mind and the degree of his apprehension of danger when he was with the victim. He also contends this testimony would tend to prove who was the aggressor in the death-resulting encounter.

Evidence of a homicide victim's prior violent or turbulent character is ordinarily immaterial and not admissible at trial. *State v. Jacoby*, 260 N.W.2d 828, 837 (Iowa 1977). An exception to this general rule exists where the accused asserts that he or she acted in self-defense and the slightest supporting evidence is introduced. *Id.* Iowa R.Evid. 404(a)(2)(A). Specific instances of conduct may be used to demonstrate character when character is an essential element of a claimed defense. Iowa R.Evid. 405(b).[1]

---

1. This court notes that in the context of a civil case in which it was claimed that the combative character of an alleged assault victim should have been admitted, the Iowa Supreme Court held that specific instances of the victim's conduct did not go to an essential element of the defendant's claim of self-defense. *Klaes v. Scholl*, 375 N.W.2d 671, 676 (Iowa 1985). As the State has not made an analogous argument in this case, we assume the applicability of Iowa R.Evid. 405(b) and address our attention to

Coaklay's testimony would have been relevant. She would have been able to provide evidence as to the violent conduct of the victim toward her on the night he was killed. This evidence could have had the tendency to make more probable Shearon's testimony about the aggressive conduct of the victim and Shearon's need to defend himself. However, simply because evidence is relevant does not ensure its admissibility. If the probative value is substantially outweighed by the danger of unfair prejudice, the relevant evidence may be excluded. Iowa R.Evid. 403. Unfair prejudice exists when minimally relevant evidence could lead a jury to improperly use it to reach a decision based on inflammatory and emotional considerations that are unfavorable to a victim because of his or her conduct or lifestyle. *State v. Wilson*, 406 N.W.2d 442, 447 (Iowa 1987). There was a risk of substantial prejudice if Coaklay's testimony had been admitted. The allegations of attempted sexual abuse could have influenced the jury to believe that the victim "got what he deserved." This testimony would have misled the jury and shifted its focus from the evidence of Shearon's guilt, to the subject of the victim's alleged reprehensible conduct in trying to sexually assault a woman. Relevant evidence may be excluded if its probative value is substantially outweighed by the risks of misleading the jury or of confusing the issues. *Id.* at 448.

Coaklay's testimony would have been especially prejudicial in that its effect would have been compounded by the fact that earlier testimony had been presented which characterized the victim as a drug dealer. To have added Coaklay's allegations to this already unsympathetic characterization of the victim, would have been substantially prejudicial and would have outweighed the probative value of her testimony. The trial court did not abuse its discretion in denying the admission of Coaklay's testimony.

Even if the probative value of Coaklay's testimony warranted its admission, its exclusion would fall within the realm of harmless error. "When a trial court error

is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected." *State v. Hackney*, 397 N.W.2d 723, 729 (Iowa 1986). Evidence was presented that Shearon had earlier discussed with others his desire to obtain money from the victim and his willingness to use force to do so. There was detailed testimony with regard to the failed attempt by Shearon and his friend to steal money from the victim's automobile. There was evidence that the defendant stabbed the victim twenty-two times, stole money from the victim and discarded his bloody clothes along the interstate. Finally, Shearon's story that he was choked by the victim and stabbed him in self-defense, was effectively rebutted by the absence of any marks or bruises on his neck. Evidence of Shearon's guilt was overwhelming and would sustain a finding of harmless error in this case.

II. *Robbery Conviction.* Shearon contends that there was insufficient evidence to sustain his conviction for first-degree robbery. He premises this claim on a rather unique interpretation of Iowa Code section 711.1. He contends this statute applies to one who has the intent to commit a theft and in doing so commits an assault upon "another," threatens "another," or puts "another" in fear of immediate serious injury. Shearon asserts that the term "another" implicitly means "person" and a corpse is not a person. Therefore, because he took money from the victim after he was dead he could not have committed robbery as defined by section 711.1.

While this issue of semantics is interesting, this court need not address it as Shearon has not preserved this claim for appeal. An issue not raised before the trial court cannot be raised for the first time on appeal. *State v. Hansen*, 286 N.W.2d 163, 165–66 (Iowa 1979).

The orderly, fair and efficient administration of the adversary system requires the litigants not be permitted to present one case at trial and a different one on appeal. One reason is that the trial

whether Coaklay's testimony was relevant and/or prejudicial.

court's ruling on an issue may either dispose of the case or affect its future course. In addition, the requirement of error preservation gives opposing counsel notice and an opportunity to be heard on the issue and a chance to take proper corrective measures or pursue alternatives in the event of an adverse ruling. *State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983). Whether a defendant may circumvent robbery charges by waiting until his victim is dead before stealing his money will have to be addressed another day.

■ III. *Examination and Photographs of Defendant's Body.* After his arrest and waiver of his *Miranda* rights, Shearon informed Officer Fitzgerald that the victim had attempted to choke him and he had then stabbed the victim in self-defense. Officer Fitzgerald observed Shearon's neck, face and hands and noticed no visible marks or bruises. Officer Fitzgerald indicated to Shearon that, in his experience as a police officer, he had normally found that when a person had been strangled or choked he usually would have some type of bruising on his neck. Shearon indicated his knee hurt and he had a bruise on his shoulder. Fitzgerald had Shearon pull down his coveralls so he could see these alleged injuries. Fitzgerald then contacted identification personnel and had them take photographs of Shearon's body.

Shearon contends the removal of his coveralls and examination of his body constitutes a warrantless search and the testimony and photographs with regard thereto should not have been admitted at trial. The State argues examination of Shearon's body was premised on his consent, or in the alternative, was justified by the exigent circumstances of the situation.[2]

Shearon claims his constitutional rights were violated; therefore, our review is de novo. *State v. Baker*, 441 N.W.2d 388, 390 (Iowa App.1989). At the outset, this court recognizes that the testimony with regard to the visual observations of Shearon's neck, face, and hands was admissible, because such observations do not appear to be a "search" within the parameters of the fourth amendment. *Hall v. State of Iowa*, 705 F.2d 283, 292 (8th Cir.1983), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983) (examination of exposed flesh was not a "search" subject to the requirements of the fourth amendment). Furthermore, the photographs taken of Shearon's neck, face and hands were admissible because they merely recorded what the officers saw and did not constitute a "search" within the realm of the fourth amendment. *State v. Dickerson*, 313 N.W.2d 526, 532 (Iowa 1981). What is at issue is the admissibility of observations and photos made of Shearon's body after his coveralls were removed.

The State contends Shearon consented to the removal of his coveralls and examination of his body. Officer Fitzgerald testified[3] Shearon cooperated and removed his coveralls when the police informed him they wished to see the injuries he claimed to have to his knee and shoulder. Shearon denies giving his consent to this search and argues his conduct amounted only to acquiescence to a search carried out by one having apparent authority to do so. Such acquiescence is not enough to establish voluntary consent. *State v. Carter*, 267 N.W.2d 385, 387 (Iowa 1978). Review of the issue of voluntariness of consent to search, requires an examination of the totality of the circumstances. *State v. Hall*, 297 N.W.2d 80, 89 (Iowa 1980), *cert. denied*, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). The court's scope of review is de novo and the burden of proof

---

**2.** As the State has not contested whether examination of Shearon's body was even a "search" subject to the requirements of the fourth amendment or chapter 810 of the Iowa Code, this court assumes without deciding, for purposes of this opinion, that it was such a search. See 2 W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.3(c) (2d ed. 1987) (discussion of whether inspection of the body may be undertaken whenever there is lawful custody).

**3.** In determining whether the court erred in overruling Shearon's motion to suppress, we may consider not only the evidence in the hearing on the motion to suppress, but also the later trial evidence. *State v. Schubert*, 346 N.W.2d 30, 33 (Iowa 1984).

is on the State to show the validity of the consent by a preponderance of the evidence. *Id.*

The circumstances of this search convince the court that it was done pursuant to Shearon's consent. Shearon had voluntarily waived his *Miranda* rights and was willing to be questioned by the police. He was trying to convince the police that he had killed Myers in self-defense when Myers tried to strangle him. When the officers expressed doubt about this claim because Shearon's neck bore no visible marks of a struggle, he stated he had an injured shoulder and knee. He then complied with their request to let them see these parts of his body. It was in Shearon's interest to cooperate with this request and to try and substantiate his story by letting the officers see his body. Shearon argues that he was never informed that he did not have to consent to the search. Knowledge of the right to refuse consent is only one factor to be considered in determining the issue of voluntariness. *State v. Ege*, 274 N.W.2d 350, 353 (Iowa 1979). This factor is not decisive in this case, and this court finds Shearon consented to the search of his body.

■ Even if Shearon had not consented to the search, the exigent circumstances of the situation would have warranted the examination of his body. Officer Fitzgerald testified he was concerned that if he took the time necessary to obtain a search warrant or a nontestimonial identification order pursuant to chapter 810, Shearon could inflict injuries upon himself and create bruises or marks to substantiate his claim of self-defense.

Exigent circumstances justify a warrantless search and seizure when there is a probability evidence will be concealed or destroyed unless it is immediately confiscated by the police. *State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973). In this case there was not only a risk Shearon might destroy evidence (his relatively unblemished flesh contradicted his claim of a struggle), but there was also the risk Shearon would manufacture evidence by inflicting himself with bruises. Shearon

had been informed the reason the officers wished to view his body was to determine if there were any marks which would substantiate his claim of a struggle. It is not unreasonable to conclude that once a prisoner had been informed of an officer's doubts about his story, the prisoner might attempt to injure himself in order to support his claim of self-defense. Had the officers taken the time to obtain a warrant or chapter 810 order, Shearon would have had the opportunity to injure and bruise himself. The fact that he could have been placed under police observation while a warrant or order was being obtained is not fatal to the State's claim of exigent circumstances. Shearon could still have hurt himself and even though the officers could testify to this effect, there would still be an unresolved question as to whether the marks on Shearon's body were inflicted by himself or whether they had been the result of an earlier struggle with the victim.

A somewhat similar situation existed in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). In *Cupp*, a murder suspect voluntarily met with the police for questioning. The police noticed what appeared to be dried blood under his fingernail and asked if they could do a fingernail scraping. The suspect refused and then put his hand in his pocket and appeared to be scraping away the material with keys and coins that were in his pocket. The police then did a warrantless scraping of the suspect's fingernail. While the United States Supreme Court upheld the search as one incident to a valid arrest, *Id.* at 295, 93 S.Ct. at 2003, 36 L.Ed.2d at 905, the analysis used by the court alludes to the exigent circumstances of the case and the State's interest in preventing the destruction of evidence.

The warrantless examination of Shearon's body was justified by the exigent circumstances of the case. The testimony and photographs with regard thereto were properly admitted into evidence.

Even if the examination of Shearon's body was not supported by his consent or exigent circumstances, the admission of evidence obtained from that search amounted to harmless error. Where there has been a

violation of a defendant's constitutional rights, we can hold an error to be harmless only when we can declare a belief that it was harmless beyond a reasonable doubt. *State v. Coy*, 433 N.W.2d 714, 715 (Iowa 1988).

Admission of testimony and photographs of Shearon's unclothed body would constitute harmless error because it was merely cumulative to evidence properly admitted at trial. Officer Rowley arrested Shearon on October 3, 1987, and he testified Shearon was only wearing bikini underwear when the police arrested him. Rowley testified that Shearon appeared to have no injuries or marks on his body when he was arrested. The subsequent observations and photographs of Shearon's body were only cumulative to Rowley's observations, and their admission was harmless beyond a reasonable doubt. *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980).

Aside from being cumulative, the evidence was also exculpatory in that it revealed a bruise on Shearon's shoulder. Admission of exculpatory evidence constitutes harmless error beyond a reasonable doubt. *Hall*, 705 F.2d at 292.

Finally, this evidence was harmless beyond a reasonable doubt because it could not have contributed to the jury's rejection of Shearon's claim of self-defense. Shearon claimed he had been choked. The absence of any bruising to his neck effectively rebutted this claim. Testimony with regard to Shearon's exposed neck was clearly admissible, and in this case it was determinative. Evidence that the rest of his body did not sustain significant bruising could not have had much impact on the jury's determination of whether Shearon had been choked and had acted in self-defense. Because of this lack of probativeness, admission of this evidence would be harmless. *State v. Cole*, 295 N.W.2d 29, 39–40 (Iowa 1980). The decision of the district court is affirmed.

AFFIRMED.