# IN THE COURT OF APPEALS OF IOWA

No. 14-0595
Filed October 14, 2015


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DOVIONO DETREESE GRAY,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Scott County, Mark J. Smith (guilty plea) and Marlita A. Greve (trial and sentencing), Judges.


The defendant appeals his convictions of intimidation with a dangerous weapon, intimidation with a dangerous weapon with intent, and felon in possession of a firearm.  **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**


Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Michael J. Walton, County Attorney, and Patrick McElyea and Melissa Zaehringer, Assistant County Attorneys, for appellee.


Considered by Mullins, P.J., Bower, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

During the early morning hours of July 25, 2013, shots were fired at and into a vehicle occupied by Chastity Ballew and Christopher Perez. Doviono Gray was identified as the shooter and convicted of intimidation with a dangerous weapon, intimidation with a dangerous weapon with intent, and felon in possession of a firearm after the district court refused to accept his guilty plea on the grounds it lacked a factual basis. On appeal, Gray challenges the rejection of his guilty plea and the admission of certain evidence at his trial. He also contends his trial counsel was ineffective for not challenging the multiple punishments for intimidation with a dangerous weapon on double jeopardy grounds.

### I. Factual Basis for Guilty Plea.

By agreement with the State, Gray pled guilty to two counts of intimidation with a weapon in exchange for dismissal of other pending charges. The State also agreed not to seek the habitual-offender enhancement. The court found a factual basis for the guilty plea but deferred accepting the plea until sentencing. At the sentencing hearing, however, the court determined there was no factual basis for the plea and rejected the agreement.

We review the court's decision to reject a guilty plea for an abuse of discretion. *State v. Hager*, 630 N.W.2d 828, 833 (Iowa 2001). This discretion is broad but not unlimited. *Id.* An abuse of discretion may occur when the court exercises its discretion upon an error of law. *Farley v. Glanton*, 280 N.W.2d 411, 415 (Iowa 1979).

At the time of the plea, the record must disclose facts satisfying all the elements of the offense. *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). While the factual basis need not be detailed, the defendant must acknowledge facts consistent with the elements of the crime. *Id.* at 30. Gray pled guilty to intimidation with a dangerous weapon, a class "D" felony, which is committed when a person

> shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.

Iowa Code § 708.6 (2013). In order for a factual basis to exist, Gray must have (1) threatened to discharge a dangerous weapon at others and (2) the circumstances raise a reasonable expectation the threat would be carried out.

At the plea hearing, Gray admitted he threatened to discharge a firearm into a vehicle occupied by two people and those people had a reasonable expectation the threat might be carried out. At the sentencing hearing, the court asked if Gray threatened Perez with a weapon, and Gray's attorney stated Gray "always maintained that he wasn't actually in possession of a weapon, but he did make that threat." After a recess, the court concluded the law required "an immediate availability of a weapon to indicate that the person would be raising a reasonable expectation that the threat would be carried out." Because "a verbal threat without any type of weapon present is not sufficient," the court rejected the plea on the basis it lacked a factual basis. Gray argues the court's interpretation was in error.

In *State v. Lane*, 743 N.W.2d 178, 182 (Iowa 2007), the defendant argued there was insufficient evidence to convict him of intimidation with a deadly weapon as a class "D" felony. There, the defendant made statements about a deadly courthouse shooting in Atlanta, which had occurred eight days earlier, stating,

> [Y]ou can take this how you want. That Atlanta shooting is not going to be the only thing that's going to happen. I am going to come down, get a court schedule, and I'm going to take care of all you mother fuckers. . . . You guys are all going to be sorry when I get a court schedule.

*Lane*, 743 N.W.2d at 180-81. At the time he made these statements, the defendant was being arrested and placed in handcuffs. *Id.* at 180. Although Lane was not in possession of a firearm at the time he made the statements, our supreme court determined the evidence "overwhelmingly proved a reasonable person hearing Lane's statements would have expected him to act on his threats." *Id.* at 184.

Because *Lane* indicates it may not be necessary for a defendant to have or display a deadly weapon in order to be convicted of intimidation with a deadly weapon, the sentencing court erred in finding Gray could not have committed the crime without admitting to possessing a weapon. However, the court did not abuse its discretion in refusing Gray's plea. Although the defendant in *Lane* did not possess a weapon, he made specific statements to the officers a reasonable person could infer were threats. *Id.* at 180-81. Here, Gray did not disclose how his threats were made. The minutes of evidence state Gray made his threats by pointing a weapon at the pair in the vehicle, but Gray denied possessing a weapon. Gray made no admission upon which the court could determine there

was a reasonable expectation his threat would be carried out. Therefore, Gray's plea lacked a factual basis, and we affirm the court's rejection of the plea agreement.

## II. Admission of Evidence.

Before trial, Gray moved to exclude evidence relating to another shooting and its investigation. The State theorized the shootings were connected and the evidence was relevant to Gray's intent. The court reserved ruling on the motion until trial when it allowed Detective Thomas to testify he was investigating the July 1, 2013 shooting death of Zachary Thompson. Specifically, Detective Thomas testified Gray was Thompson's cousin and close friend, was present when Thompson was shot, and took Thompson to the hospital. He testified Gray and Thompson did not get along with Perez and his brother, Cortez Ralston, who were suspects in Thompson's death, although no arrests had been made and the investigation was ongoing. Detective Thomas also testified Perez and Ralston traveled together in a tan Pontiac Bonneville, which was used in Thompson's shooting and which was shown being damaged in a video Gray posted to his Facebook page.

Gray contends the district court abused its discretion in admitting this evidence. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013) (noting we review evidentiary rulings for an abuse of discretion). He argues the evidence was not relevant because there was no proof that he knew Perez was a suspect in Thompson's shooting. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.

Evid. 5.401. "The test is whether a reasonable person might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988) (internal quotation marks omitted).

Although there was no evidence Gray knew Perez was a suspect in Thompson's shooting, his presence at the shooting and the video of the retaliation on the Pontiac Bonneville suggests Gray had the knowledge or belief Perez was involved. If Perez was involved in Thompson's shooting—or Gray believed he was involved—it is more probable Gray was involved in shooting at Perez. Accordingly, the evidence of Thompson's shooting was relevant, and the district court was within its discretion to admit it.

Although the evidence was relevant, it should not be admitted if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Civ. P. 5.403. "Probative value" concerns the strength or force of the evidence's relevancy. *State v. Bayles*, 551 N.W.2d 600, 607 (Iowa 1996). "Undue prejudice" is "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Id.*

The probative value of the evidence relating to Thompson's shooting is not outweighed by the danger of unfair prejudice. The evidence at issue was probative to the question of motive. *See State v. Richards*, 809 N.W.2d 80, 93 (Iowa 2012) (holding past acts that reveal the emotional relationship between the defendant and victim are "highly probative of the defendant's probable motivation

and intent in subsequent situations" (internal quotation marks omitted)); *State v. Barnes*, 791 N.W.2d 817, 826-27 (Iowa 2010) (holding evidence of defendant's anger at the victim was admissible to show the relationship between them, probative of the defendant's motive, and the danger of unfair prejudice did not outweigh the probative value); *State v. Reynolds*, 765 N.W.2d 283, 290-91 (Iowa 2009) (noting "we have recognized that the prior relationship between the defendant and the victim is relevant in establishing intent and/or motive"). Unlike the risk created by evidence implicating the accused of committing a similar crime, the risk of the evidence concerning the victim's possible involvement in an earlier shooting causing unfair prejudice to Gray was low. *Cf. State v. Henderson*, 696 N.W.2d 5, 13 (Iowa 2005) ("It would be extremely difficult for jurors to put out of their minds knowledge that the defendant had [committed a similar crime] in the past and not allow this information to consciously or subconsciously influence their decision."). To the extent the challenged evidence implicated Perez in the Thompson's death, it was more prejudicial to the State than Gray. *See State v. Shearon*, 449 N.W.2d 86, 87-89 (Iowa 1989) (denying the defendant's claim the court erred in refusing to admit evidence the homicide victim had raped someone two hours before he was killed because, while relevant, the evidence could have influenced the jury to believe the victim "got what he deserved" and shifted the focus from the defendant's guilt to the subject of the victim's alleged reprehensible conduct). The district court did not abuse its discretion in admitting the evidence.

### III. Ineffective Assistance of Counsel.

Finally, Gray contends his trial counsel was ineffective in failing to argue his multiple punishments for intimidation with a dangerous weapon violated the Double Jeopardy Clause. He argues the evidence establishes only one continuous act of shooting at or into a vehicle. Because his claim implicates a constitutional violation, our review is de novo. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Ordinarily, we preserve such claims for postconviction-relief proceedings to allow the record to be fully developed. *Id.* However, we will resolve ineffective-assistance claims on direct appeal where the record is adequate. *Id.*

Ineffective assistance of counsel occurs where counsel's subpar performance of duties prejudices the defendant. *Id.* at 494-95. Therefore, in order to prevail, Gray must show his trial counsel failed to perform an essential duty and the resulting prejudice from that failure. *See id.* at 495. He must show both or his claim fails. *See id.*

The Double Jeopardy Clause protects against multiple punishments for the same offense. *State v. Schmitz*, 610 N.W.2d 514, 515 (Iowa 2000). However, a single course of conduct may give rise to multiple charges and convictions, *State v. Velez*, 829 N.W.2d 572, 584 (Iowa 2013), and multiple punishments can be assessed after a defendant is convicted of two different offenses. *State v. Smith*, 573 N.W.2d 14, 19 (Iowa 1997). Here, Gray was convicted of the class "C" offense of intimidation with a dangerous weapon with the intent and the class "D" offense of intimidation with a dangerous weapon without intent. Although two categories of crimes are differentiated for

sentencing purposes, Iowa Code section 708.6 defines the offense of intimidation with a dangerous weapon. *See State v. Garr*, 461 N.W.2d 171, 174 (Iowa 1990) ("[S]pecifying the degrees of theft does not change theft into a different offense; it merely provides a system of categorizing degrees of theft in order to classify the crime for sentencing."). Accordingly, the imposition of multiple sentences for the varying degrees of the offense violates the Fifth Amendment double jeopardy protection. *See State v. Grindele*, 577 N.W.2d 858, 860 (Iowa 1998) (noting first-degree and second-degree theft are the same offense under *Garr*, and therefore, the imposition of multiple sentences for the different degrees of theft violated the defendant's Fifth Amendment rights).

The State argues Gray was convicted of separate offenses because the marshalling instructions specified Ballew as the victim of intimidation with a dangerous weapon and Perez as the victim of intimidation with a dangerous weapon with intent. However, the offense criminalized by the legislature here is the act of shooting "into . . . a . . . vehicle . . . occupied by another person." In other words, it is the act of shooting into a vehicle that creates the offense, so long as the vehicle is occupied by at least one person. Therefore, the number of passengers inside the vehicle is irrelevant because the "victim" is the occupied vehicle. *See State v. Ross*, 845 N.W.2d 692, 699 (Iowa 2014) (noting there is "no single victim involved" in prosecution for intimidation with a dangerous weapon with intent under section 708.6 where defendant was charged with shooting into "an assembly of people"; rather, "the victim is the assembly of people as a whole"). Had the legislature made it an offense to shoot at a person in a vehicle, a defendant who shot at an occupied vehicle would commit a

different offense against each occupant. As the statute is written, there can only be one offense committed for each act against an occupied vehicle. Because Gray shot at or into a single vehicle, he only committed one offense of intimidation with a dangerous weapon.[1]

Had his trial counsel raised a double jeopardy challenge, the court would have only upheld Gray's conviction for intimidation with a dangerous weapon with intent. Counsel's failure to challenge Gray's convictions on double jeopardy grounds prejudiced Gray. Accordingly, counsel was ineffective in failing to raise the argument below.

For the above reasons, we vacate Gray's conviction and sentence for intimidation with a dangerous weapon. We affirm Gray's convictions of intimidation with a dangerous weapon with intent and felon in possession of a firearm, and remand to the district court for sentencing on those convictions.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[1] We recognize Gray could have been found guilty of committing multiple acts of intimidation with a dangerous weapon against the same victim. *Ross*, 845 N.W.2d at 701 ("[E]vidence of the same two people experiencing a reasonable apprehension of fear may support multiple counts of intimidation with a dangerous weapon with intent."). This determination depends on whether a defendant's conduct is "one continuous act or a series of separate and distinct acts." *Id.* at 705. However, this is a question for the jury to decide. *See State v. Love*, 858 N.W.2d 721, 724 (Iowa 2015) (noting where a defendant was charged with separate acts of assault, the jury was required to engage in the fact-finding necessary to support a finding of multiple assaults). Although the evidence may support a finding Gray committed two separate and distinct acts supporting multiple counts of intimidation with a dangerous weapon, the jury was not asked to make that determination, and therefore, we cannot affirm his convictions on this basis. *See id.* at 725. (holding the defendant's assault convictions must merge where the jury was not asked to determine whether the defendant committed separate and distinct acts of assault "even though the evidence might have been sufficient to support separate crimes").