# IN THE COURT OF APPEALS OF IOWA

No. 18-0677
Filed May 15, 2019

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MIGUEL ANGEL LORENZO BALTAZAR,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Miguel Angel Lorenzo Baltazar appeals his conviction for murder in the first degree. **REVERSED AND REMANDED FOR NEW TRIAL.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Chief Judge.**

Miguel Angel Lorenzo Baltazar appeals his conviction for murder in the first degree. He argues his counsel was ineffective for failing to object to jury instructions on his justification defense, and both parties argue the court abused its discretion in allowing only certain character evidence of the decedent. Because the 2017 amendments to Chapter 704 of the Iowa Code should have resulted in the jury being instructed without the "alternative course of action" language, we find counsel breached an essential duty in failing to object when the older version of the justification instruction was given, and prejudice resulted. The evidence presented at trial was sufficient to prove Lorenzo Baltazar acted with the specific intent to kill, and thus we reverse and remand for new trial. Further, should the issue of the character evidence arise during the new trial, we also find the trial court did not abuse its discretion in allowing only certain character evidence.

## I.     Background Facts and Proceedings

On the afternoon of July 28, 2017, Des Moines police responded to reports of gunshots on Oakland Avenue. Upon arrival, officers found one person, later identified as Jeffrey "Pumba" Mercado, fatally wounded from apparent gunshot wounds. Officers began searching for a car seen leaving the scene. When an officer attempted to stop a matching car, it sped away but soon crashed in a residential area. After a brief search of the area, officers captured Anthony Garcia in a backyard and Lorenzo Baltazar in a drainage pipe. Officers also recovered a handgun in the grass near the suspects' crashed car.

An autopsy concluded Mercado's death was a homicide as a result of a gunshot wound to his back. The autopsy showed two bullets had passed through Mercado, one entering his right buttocks and the other entering his right back.

Lorenzo Baltazar proceeded to trial for Mercado's death from March 26 to April 2, 2018. Numerous witnesses testified, including several Des Moines police officers and investigators as well as multiple civilians who heard gunshots or responded to the shooting. Garcia also testified for the State, acknowledging he agreed to a plea bargain based in part on providing truthful testimony. According to Garcia, Lorenzo Baltazar had a previous disagreement with Mercado, calling him "an enemy." Garcia had driven Lorenzo Baltazar around in search of Mercado in the days before the shooting. On the afternoon of July 28, 2017, Garcia picked up Lorenzo Baltazar, and Lorenzo Baltazar asked him to drive to Oakland Avenue to look for Mercado. As they neared Oakland, Lorenzo Baltazar pulled out a gun and said he was going to fight Mercado if they found him. They saw Mercado walking along the sidewalk on Oakland, and Garcia stopped the car a few feet away from him. Lorenzo Baltazar said, "What's up, Pumba," and they started arguing with Mercado. Mercado did not reply and began to run away, and Lorenzo Baltazar exited the car and rapidly fired "four or five" times directly at Mercado.[1] Mercado fell after being hit, and Lorenzo Baltazar told Garcia to drive them away. Lorenzo Baltazar initially instructed Garcia to drive slowly to avoid drawing attention. When the officer tried to stop them, Garcia panicked and sped away.

---

[1] Officers found five spent casings in the street after the shooting.

Lorenzo Baltazar also testified at his trial, stating he first learned of Mercado about eighteen months before the shooting. Since then, both his uncle and his cousin had been injured in altercations with Mercado, and Lorenzo Baltazar suffered a broken arm in another altercation. More recently, Mercado had sent messages to Lorenzo Baltazar through social media threatening him with physical harm such that he believed his life was in danger. Lorenzo Baltazar eventually decided "[t]o confront [Mercado] and pretty much ask him what did I do." When Garcia picked him up on the afternoon of July 28, 2017, Lorenzo Baltazar said he wanted to go to Oakland Avenue to "confront" Mercado. When they encountered Mercado on the street, Lorenzo Baltazar stepped out of the car and held the handgun at his side in case Mercado rushed the car. He said, "Hey, Pumba," to draw his attention without appearing to be aggressive. Mercado looked at him, adjusted his pants, and took a couple steps toward the car. As Mercado reached for his pockets, Lorenzo Baltazar thought he saw a handle for a gun or knife in his pocket.[2] He said, "Pumba, we don't need to do this." Mercado continued advancing, and Lorenzo Baltazar—fearing he would be killed—panicked, raised the handgun, and pulled the trigger multiple times. He claimed he did not intend to hit Mercado but did intend "[t]o at least scare" him. "[S]hocked" and "confused" that he had hit Mercado, he reentered the car and told Garcia to drive.

Prior to trial, Lorenzo Baltazar sought to admit two videos showing Mercado's actions before the shooting, asserting they both depicted his violent character. The court denied the request, but it allowed him to question two

---

[2] Police found a lighter, a phone, and a pair of pliers on Mercado after he died.

detectives about the content of the videos. According to one detective, a store surveillance video from the night before the shooting showed Mercado conversing with another man and then "Mercado can be seen punching the guy a couple of times." According to another detective, a home surveillance video from minutes before the shooting showed Mercado walking up to a car and "taking several swings inside the vehicle at the individual sitting in the passenger seat," causing minor injuries to the passenger.

The jury found Lorenzo Baltazar guilty of murder in the first degree, affirming in a special interrogatory he was armed with a dangerous weapon. The court sentenced him to life in prison. He now appeals.

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). We review evidentiary rulings for abuse of discretion. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015).

## III. Ineffective Assistance—Jury Instructions on Justification

Lorenzo Baltazar argues his counsel was ineffective for failing to object to the jury instructions on his claim of justification. "Ineffective-assistance-of-counsel claims require a showing by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice." *Schlitter*, 881 N.W.2d at 388. "Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim. Yet, in some instances, the appellate record can be adequate to address the claim on direct appeal." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

Lorenzo Baltazar was charged with murder in the first degree under Iowa Code sections 707.1 and 707.2 (2017). He claimed the defense of justification, specifically self-defense, and the jury received a series of instructions on justification. Instruction No. 20 says justification means, "A person may use reasonable force to prevent injury to the defendant." Instruction No. 21 says the defendant was not justified if the State proves any of five elements, including, "An alternative course of action was available to the defendant." Regarding an alternative course of action, Instruction No. 25 says:

> [I]f a defendant is confronted with the use of unlawful force against him, he is required to avoid the confrontation by seeking an alternative course of action before he is justified in repelling the force used against him. However, there is an exception.
> If the alternative course of action involved a risk to his life or safety, and he reasonably believed that, then he was not required to take or use the alternative course of action to avoid the confrontation, and he could repel the force with reasonable force including deadly force.

In 2017, Iowa enacted legislation with multiple changes affecting a justification defense. *See* 2017 Iowa Acts ch. 69, §§ 37–44. Prior to the legislation, the State could rebut a claim of justification by proving, "An alternative course of action was available to the Defendant." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993); *see also* Iowa Code § 704.1 (2016). The 2017 legislation deleted the "alternative course of action" language from the Iowa Code and added language saying, "A person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force." 2017 Iowa Acts ch. 69, § 37 (codified at Iowa Code § 704.1(3)).

The amendments to justification took effect July 1, 2017, prior to the July 28 shooting at issue here. *See id.* The amendments clearly allow the justification

defense regardless of whether an alternative course of action was available. *See id.* Nevertheless, Lorenzo Baltazar's jury was erroneously instructed he could not claim justification if the State proved an alternative course of action was available to him. Because we see no strategic reason for his counsel to fail to object to this erroneous instruction, his counsel breached an essential duty. *See State v. Harris*, 891 N.W.2d 182, 187–88 (Iowa 2017) (noting counsel may make a strategic choice to not object to a jury instruction, but finding "no possible strategic reason for failing to object" here).

"Errors in jury instructions are presumed prejudicial unless 'the record affirmatively establishes there was no prejudice.'" *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011) (quoting *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010)). The State argues Lorenzo Baltazar suffered no prejudice because he was "engaged in illegal activity" at the time of the shooting, he was not "lawfully present before using force," and he did not "notify a law enforcement agency about [his] use of deadly force within a reasonable time period." Iowa Code §§ 704.1(3), .2B(1). Regardless of any additional changes to justification under 2017 Iowa Acts chapter 69, the "alternative course of action" language submitted to the jurors was clearly no longer appropriate. The jury should have been allowed to sort out the evidence under the parameters of the amended statutory language to determine whether Lorenzo Baltazar's justification defense would still render a guilty verdict. In light of Lorenzo Baltazar's testimony, we cannot say the record affirmatively establishes the jury would have rejected his justification defense without the erroneous instructions. Because he has shown both breach of an essential duty

and prejudice, he has proven ineffective assistance of counsel.  *See Murray*, 796 N.W.2d at 908.  Therefore, we reverse his conviction.

### IV.    Sufficiency of the Evidence—Specific Intent

When we find prejudicial error at trial requiring reversal of a criminal conviction, double-jeopardy principles prohibit a retrial unless the evidence presented was sufficient to support the conviction.  *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).  Evidence is sufficient "to support a verdict when the record reveals evidence that a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  In making this determination, '[w]e view the evidence in the light most favorable to the verdict,' including all reasonable inferences that may be deduced from the record."  *Truesdell*, 679 N.W.2d at 615 (quoting *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995)).

Lorenzo Baltazar acknowledges he shot Mercado and caused his death, but he argues the evidence is insufficient to prove he acted with specific intent to cause Mercado's death.  *See State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010) (stating one element of murder in the first degree is acting with "the specific intent to kill").  "[A] trier of fact may infer intent from the normal consequences of one's actions."  *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003).

The physical evidence and testimony of numerous witnesses, including some of Lorenzo Baltazar's own testimony, is more than sufficient to prove the specific intent to kill.  Lorenzo Baltazar knew Mercado and knew Mercado had threatened him and his family.  He sought to confront Mercado while holding a handgun.  He fired multiple shots, striking Mercado twice.  He immediately fled the scene and ultimately hid in a drain pipe to avoid capture.  While he claims he

merely fired rapidly with no intent to kill, the jury is entitled "to believe or disbelieve the testimony of witnesses as it chooses and give such weight to the evidence as in its judgment the evidence was entitled to receive." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984). Therefore, the evidence is sufficient for the jury to conclude he acted with the specific intent to kill, and we remand for new trial.

## V. Character Evidence of the Victim

Because this case must be retried, we consider the parties' challenges to the admission of character evidence regarding Mercado. *See State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) (addressing "other issues in this appeal that are likely to arise upon remand"). Lorenzo Baltazar sought to admit two surveillance videos, one showing Mercado punching a man in a convenience store the night before his death and the other showing Mercado punching a passenger in a car minutes before his death. Lorenzo Baltazar asserted both videos showed Mercado's violent character. The court refused to admit the videos but allowed two detectives to testify about their contents. Both parties argue the court abused its discretion.

"Evidence of a homicide victim's prior violent or turbulent character is ordinarily immaterial and not admissible at trial. An exception to this general rule exists where the accused asserts that he or she acted in self-defense and the slightest supporting evidence is introduced." *State v. Shearon*, 449 N.W.2d 86, 87 (Iowa Ct. App. 1989). "Then the violent, quarrelsome, dangerous or turbulent character of the deceased may be shown, both by evidence of his or her reputation in that respect and by witnesses who can testify from an actual knowledge of the victim's character." *State v. Jacoby*, 260 N.W.2d 828, 837 (Iowa 1977). "[S]pecific

acts to prove the victim's violent, dangerous, turbulent or quarrelsome character, even though unknown to the defendant, are admissible if so closely related to the fatal event as to constitute part of the res gestae." *Id.* at 838; *see also State v. Dunson*, 433 N.W.2d 676, 681 (Iowa 1988) (permitting introduction of specific events as character evidence of an assault victim even when those events occurred after the assault).

In ruling on the character evidence during trial, the court said:

[The detectives] can say what [they] saw, but I think [the videos are] too prejudicial because it allows the jury to speculate, and it allows also—it's unfair to the State in that it gives you no opportunity to explain those two events whatsoever.

It's confusing to the jury. It's isolated. You don't know exactly what was going on, especially when there's no sound to it. So I have a problem with that.

However, they can describe what they saw in the video, and say "Yeah, we saw him punching and, therefore, we think he's violent."

Lorenzo Baltazar claimed self-defense and testified in support of his defense. Accordingly, he has met the threshold to introduce evidence of Mercado's violent character. *Shearon*, 449 N.W.2d at 87. The State argues the facts and the law do not compel the court to admit this character evidence. However, we review the court's decision for abuse of discretion. *See id.* We find no abuse of discretion in allowing the detectives to testify about Mercado's actions in the videos.

Regarding the videos themselves, "even otherwise relevant admissible evidence is inadmissible 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *State v. Webster*, 865 N.W.2d 223, 243 (Iowa 2015) (quoting *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013)); *see also* Iowa R.

Evid. 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The videos add little probative value beyond the detectives' testimony. They come from fixed surveillance cameras that obscure many visual details, such as the person inside the car who Mercado apparently punches. They have no sound and provide no context for Mercado's actions. Therefore, we also find no abuse of discretion in excluding the videos.

**VI.    Conclusion**

Lorenzo Baltazar's counsel was ineffective for failing to object to erroneous jury instructions on justification. Because the evidence presented at trial was sufficient to prove he acted with the specific intent to kill, we reverse and remand for new trial. Should the issue arise in the new trial, we find no abuse of discretion in the trial court's decision to exclude videos of Mercado's actions but to allow detectives to testify about the contents of the videos.

**REVERSED AND REMANDED FOR NEW TRIAL.**